1999-NMCA-104

987 P.2d 1163

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Adam PAIZ, Defendant–Appellant.**

**No. 19,491.**

Court of Appeals of New Mexico.

July 6, 1999.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Santa Fe, Thomas DeMartino, Assistant Public Defender, Albuquerque, for Appellant.

## *OPINION*

WECHSLER, Judge.

{1} Defendant appeals his conviction for aggravated battery, contrary to NMSA 1978, Section 30-3-5 (1969). Defendant contends that the conduct of the metropolitan court judge, Keesha Ashanti, at trial and before the jury evidenced a manifest bias in favor of the State securing a conviction against him. We agree and conclude that Judge Ashanti's conduct was so egregious that it constituted plain error, and thus, Defendant's conviction

must be reversed and this case remanded for a new trial before a different, impartial judge.

*Facts and Procedural Background*

{2} The trial was conducted before a jury in the metropolitan court. The State began its case with the testimony of Albuquerque Police Officer Matt Suazo. During direct examination, Officer Suazo testified that while working as a member of the Domestic Abuse Response Team on March 1, 1997, he was dispatched to an address located in Albuquerque, Bernalillo County. When he arrived, he approached a man and woman walking down the street, whom he later identified as Adam Paiz and Isela Camarena. He testified that Camarena was bleeding from her swollen nose and lip and had blood stains on her shirt. Defendant had a fresh abrasion and blood on his right knuckles, "like he had been scratched against a surface." On cross-examination, Officer Suazo testified that when he approached Defendant and Camarena walking down the street, they were walking side by side, and were not arguing. Officer Suazo further stated that when he first spoke to Camarena, she did not want to tell him who hit her. When asked if Defendant had hit her, Camarena said that someone else had, not Defendant.

{3} When defense counsel asked Officer Suazo if Camarena told him that Defendant was not the person who hit her, the metropolitan court judge interrupted counsel and asked the officer, "One moment, why don't you just tell us what she said." Officer Suazo agreed with defense counsel that Camarena told him that someone other than Defendant had hit her. Again, the judge interrupted, asking the officer, "One moment, I need to know, what else did she say?" Officer Suazo responded that Camarena was reluctant to talk to him, so he was unable to obtain any further information from her. The judge asked Officer Suazo, "When you say reluctant, why don't you describe what it is that was said and what you observed that would lead you to the conclusion she was reluctant." Officer Suazo replied that Camarena said everything was alright and that nothing happened. Officer Suazo stated that based on the injuries he observed on Defendant and Camarena, he indicated to Camarena that he thought that Defendant was possibly her assailant. Camarena responded that it was not Defendant and that it was someone else.

{4} Officer Suazo testified that when he told Camarena that Defendant was going to be taken into custody, she was not adamant that Defendant was not her assailant. He stated that Camarena seemed appeased. The metropolitan court judge asked, "When you say appeased, could you please describe what is it you observed that would lead you to the conclusion that she was appeased." Defense counsel objected to the judge's inquiry as calling for speculation, but the judge overruled the objection. Officer Suazo responded by stating that Camarena was neither argumentative nor confrontational toward the officers. He further testified that after Defendant was taken into custody, Camarena was actually cooperative and willingly accepted assistance from victim impact personnel.

{5} The metropolitan court judge continued to question Officer Suazo, asking him, "After you informed her that Mr. Paiz was going to be arrested, did she repeatedly note he wasn't the person and [you] shouldn't arrest him?" Officer Suazo responded that when he told Camarena that he suspected that Defendant had hit her, she also indicated that someone else may have hit her.

{6} Thereafter, the metropolitan court judge extensively questioned Officer Suazo about the injuries to Defendant's right hand:

Judge: You stated that you observed blood and injuries to Mr. Paiz's knuckles?

Officer: That's correct, . . . his right hand.

Judge: Was that, what you observed consistent or inconsistent with what you observed on the female? You observed injuries on the female?

Officer: Right.

Judge: You observed injuries on Mr. Paiz?

Officer: They were consistent with the information I received that he could have inflicted the injuries sustained.

Judge: That's not my question. The injuries on the female and the injuries on

the defendant, were they consistent or inconsistent with each other?

Officer: They were consistent based on my experiences.

Judge: Have you done any prior investigation of calls of this nature?

Officer: Yes, ma'am. Since July of last year. Strictly I responded to incidents of domestic violence and the injuries that I observed on both parties, whether male or female as the primary aggressor, these injuries were consistent with those that I have witnessed or observed in other incidents of domestic violence as having been one caused by the other.

Judge: Have you had any prior experience ... where the person who has the primary injuries was reluctant to identify the assailant?

Officer: Certainly. In these particular instances of domestic violence they know one another, they're either married or boyfriend and girlfriend a lot of times. Either half don't want to incriminate the responsible person.

Counsel: Your honor, I'm sorry, I'm going to have to stop the officer there. He's talking about what happens in other cases, what's the relevance of that?

Judge: Well, he's made a conclusion in reference to ... Camarena and her testimony. I think he needs to lay the foundation as to how he reached that conclusion. If that conclusion is based on his prior experience of other victims, I think it's relevant. So objection is overruled. Continue.

Officer: Leaving off with, a lot of times they don't want to incriminate their lover, boyfriend, girlfriend, husband and wife. Just because they don't want to see them go to jail. And a lot of times I try and let the victims of domestic violence ... know that an arrest is intervention and all I want to do is help him. But a lot of times we'll still get resistance from the victim of domestic vio-

lence because they don't want to see that person taken away; they don't want to see, in instances of marriage, they don't want to see the income stop coming to the family. They feel there's going to be ....

Counsel: Your honor, I'm sorry, again I'm going to have to interrupt the officer. I think we're getting into ....

Judge: Tell me, did Mr. Paiz offer an explanation for the blood that was on him?

Counsel: Excuse me your honor. I'm sorry, that calls for hearsay.

Judge: He's the defendant charged with a crime.

Counsel: It's an out-of-court statement that would have been made.

Judge: Statements made by defendants are excepted from the hearsay rule. Objection overruled. Did he give an explanation as to the blood that was on him?

Officer: From my recollection, he indicated that he did not know how he received that injury to his right hand which was questionable for me.

Judge: He had blood on his hand, but he said he didn't know how he received it?

Officer: That's correct.

Judge: Did he say anything else about it?

Officer: He also just stated that it was somebody else.

{7} Defense counsel continued his cross-examination, asking Officer Suazo if based on his experience, Defendant's hand could have been "scratched" by someone other than Camarena. The metropolitan court judge apparently thought that Officer Suazo had testified that Defendant's hand was "scraped," not "scratched," and corrected counsel's use of the term "scratched." Defense counsel then asked Officer Suazo, "He had an abrasion, that means a scratch, doesn't it officer?" The judge interrupted, "No, no, no, no, no, no, no, nope, nope, nope, ... let's be very

careful the words we use. Let's use the words he used. Because he didn't say 'scratched.'" Although Officer Suazo had actually described Defendant's hand as appearing though it "had scratched against a surface," the judge expressed her understanding of the difference between an abrasion and a scratch, stating, "When I think of an abrasion, an abrasion is something that happens when your hand comes into contact with something else. A scratch is when something comes in contact with your hand."

{8} Accordingly, defense counsel rephrased his question, asking Officer Suazo if it was possible that Defendant received the abrasion while defending Camarena from someone else. The metropolitan court judge interrupted and did not allow counsel's question because it called for speculation. After Officer Suazo responded to the judge's question about whether he personally observed Defendant hit Camarena, the metropolitan court judge limited defense counsel's cross-examination to matters within the officer's personal knowledge.

{9} Defense counsel continued to question Officer Suazo about the possible ways Defendant could have sustained the injury to his hand:

Counsel: Officer, isn't it true that when someone gets angry, sometimes they slam their fist down on a table? Correct?

Officer: It's again speculation whether that could happen.

Counsel: But that does happen doesn't it, people get upset, they punch things, they punch the wall?

Officer: Yes.

Counsel: They punch a tree, they punch a table.

Officer: That does happen.

Judge: Punch faces also too, don't they?

Officer: Yes.

Counsel: I'm sorry, your Honor, what did you say?

Judge: I said, 'punch faces also sometimes.' Since we're speculating.

Defense counsel continued his cross-examination without objecting to the metropolitan court judge's questions. Officer Suazo acknowledged that he could not determine with

certainty what caused the abrasions on Defendant's hand. However, he testified that Defendant was the only person presented to the witness, when she was asked to identify Camarena's assailant.

{10} After defense counsel's cross-examination, the metropolitan court judge continued questioning Officer Suazo about Camarena's injuries. Specifically, the judge asked Officer Suazo if there was "temporary disfigurement or impairment" to Camarena's nose and lip as a result of her injuries. Officer Suazo responded that there was "painful, temporary disfigurement."

{11} At the conclusion of the State's redirect examination, the metropolitan court judge asked Officer Suazo whether, after his investigation, he had drawn a conclusion as to how Camarena received her injuries. In response to a further question by the metropolitan court judge concerning other suspects, Officer Suazo testified that his investigation had not yielded any other suspects who may have been responsible for Camarena's injuries.

{12} The State then called Margie Platero as its second and final witness. During his investigation, Officer Suazo met with Platero, who placed the emergency call to police. Platero identified Defendant as the person she witnessed "beating up a female." Platero testified that on the evening of March 1, 1997, a woman came to her apartment, knocking on her door and begging for help. She stated that Camarena was holding a little boy, and that a man followed her into the apartment. Camarena asked to use Platero's telephone. Platero identified Defendant as the man who entered her apartment with Camarena. She testified that Defendant did not allow her or Camarena to use the phone. The metropolitan court judge interrupted, asking Platero to describe what Defendant did that prevented her and Camarena from using the phone. Platero responded, "He got in the way, you know, pushed her away from the phone." When Platero tried to use the phone, Defendant also pushed her away and told her not to make the call.

{13} Platero further testified that she saw Defendant hit Camarena on the side of

her face with his fist, pull her hair, and pull her down and kick her. Platero did not intervene and asked the couple to leave. After the couple left, Platero called the police. She could hear Camarena screaming from behind the apartment. The police responded to the call and arrived within ten minutes, at which time Platero identified Defendant as Camarena's assailant.

{14} Platero seemed confused when attempting to describe how she identified Defendant as Camarena's assailant. Platero testified that when she looked out of her window to identify Camarena's assailant, Defendant was not the only person standing outside. She stated that there was another man standing next to Defendant, but she seemed confused about what the other man was wearing and whether he was a police officer. The metropolitan court judge interrupted, asking further questions of Platero. On cross-examination, Platero indicated she was confused about the chronology of events, so the metropolitan court judge intervened with questions to this effect. On redirect examination, Platero testified that there were two men standing outside her window when Officer Suazo asked her to identify Camarena's assailant. Platero testified that the other man was never in her apartment and that she did not see the other man hit Camarena. This testimony was inconsistent with Officer Suazo's testimony that Defendant was the only person presented to Platero when she was asked to identify Camarena's assailant. After the prosecutor stated that she had no further questions, referring to Defendant, the metropolitan court judge asked Platero, "Ma'am, do you have any doubt whatsoever that this is the man that was in your apartment, any doubt at all? Platero responded, "That's him."

{15} Defendant was convicted of aggravated battery. We note that while the briefs indicate Defendant was convicted of aggravated battery of a household member, the judgment and sentence and jury verdict indicate he was convicted of aggravated battery. At the sentencing hearing, Defendant moved for a mistrial, objecting to the metropolitan court judge's questioning of Officer Suazo. The request was denied and Defendant appealed to the district court, arguing that he was denied a fair and impartial trial as a result of the metropolitan court judge's questions, which amounted to improper comments on the evidence before the jury. In addition, Defendant argued that he was denied his constitutional right to remain silent when the metropolitan court judge asked Officer Suazo whether Defendant offered an explanation for the injury to his fist. The district court issued a memorandum opinion affirming Defendant's conviction, while expressing grave reservations about the metropolitan court judge's handling of the trial.

*Interrogation of Witnesses by the Metropolitan Court Judge*

{16} The rule governing the questioning of witnesses by the trial court provides:

A. **Calling by court.** The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

B. **Interrogation by court.** The court may interrogate witnesses, whether called by itself or by a party; provided, however, that in trials before a jury, the court's questioning must be cautiously guarded so as not to constitute an implied comment.

C. **Objections.** Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

Rule 11–614 NMRA 1999.

{17} A trial judge may question witnesses to clarify testimony for the jury or to bring out all of the facts in order to ascertain the truth. *See* Rule 11–611(A) NMRA 1999 (providing for the trial court's exercise of reasonable control over the interrogation of witnesses and presentation of evidence). A trial judge "has the prerogative to insist that all facts be presented that will insure a fair trial. However, that prerogative must be exercised with caution." *State v. Crump,* 97 N.M. 177, 179, 637 P.2d 1232, 1234 (1981). If the judge does not act cautiously, the judge risks giving an impression to the jury that the judge favors a particular position of the parties. Indeed, the jury may be especially attentive in order to have some basis to sway its judgment in a close case,

and no one in the courtroom commands the jury's respect as does the judge who makes all the decisions in a criminal trial except guilt or innocence. Thus, "[a] trial judge should studiously avoid making any remark or statement in the presence of the jury concerning factual issues or which may be construed as conveying his [or her] opinion concerning the merits of the case." *State v. Sanchez*, 112 N.M. 59, 66, 811 P.2d 92, 99 (Ct.App.1991). We examine Defendant's principal allegations against Judge Ashanti to determine whether she violated these standards.

*Extent of Questioning and Comments on the Evidence*

{18} The trial judge's "interrogation of witnesses should not be unduly protracted." *Crump*, 97 N.M. at 179, 637 P.2d at 1234. Extensive and persistent questioning by the trial judge can give the impression to the jury that the judge favors one side over the other. *See id.; United States v. Beaty*, 722 F.2d 1090, 1095 (3d Cir.1983) (holding that extensive questioning of key witness regarding matters affecting credibility was error). When extensive questioning is coupled with additional improprieties, it is easier for the appellate court to find error. *See Crump*, 97 N.M. at 179, 637 P.2d at 1234 (stating that the trial judge "must not forget his judicial function by assuming the role of advocate or by taking a partisan stance"); *United States v. Guglielmini*, 384 F.2d 602, 605 (2d Cir.1967) (holding that "persistent questioning the trial judge conducted ..., together with his comments to defense counsel, conveyed to the jury far too strong an impression of his belief in the defendants' guilt"). The trial judge potentially runs afoul of Rule 11–614 by asking questions other than to clarify, to deal with a difficult witness, or to clear up witness confusion. *See United States v. Hickman*, 592 F.2d 931, 933 (6th Cir.1979). Ordinarily, the judge should wait until redirect examination is concluded to ask clarifying questions. *See Beaty*, 722 F.2d at 1094.

{19} In the case on appeal, we have little difficulty in concluding that the metropolitan court judge abused the discretion allowed under Rule 11–614 when we consider the aggregation of her actions.

Judge Ashanti extensively questioned Officer Suazo concerning questions critical to the defense that Defendant was not the one who committed aggravated battery upon Camarena. In addition, she made remarks which were improper. We agree with Defendant that the metropolitan court judge improperly limited defense counsel's cross-examination of Officer Suazo by not allowing defense counsel to use the term "scratch." The judge's insistence on the term "abrasion" as opposed to the term "scratch," combined with her stated definition of the terms, could potentially lead the jury to infer that Defendant actively caused his hand injury by coming into contact with Camarena's face, particularly because the metropolitan court judge initiated the discrepancy in the terminology. *See Crump*, 97 N.M. at 179, 637 P.2d at 1234 (asserting that judge "should not show bias or feeling" in interrogation of witnesses).

{20} Even more significantly, when defense counsel posed alternative ways in which Defendant could have injured his hand, such as by hitting a table or wall, the metropolitan court judge interrupted with the question, "punch faces also too, don't they?" The judge was reprimanding defense counsel for speculative questioning. However, the judge's choice of words amounted to an impermissible comment on the evidence, and in our judgment constituted inexcusable misconduct by a trial judge. *See generally id.; see also State v. Sedillo*, 76 N.M. 273, 275, 414 P.2d 500, 501 (1966). Defendant pursued a defense that he was not the one who struck Camarena in the face causing her bloody nose and lip. The metropolitan court judge was correct that defense counsel's questions called only for speculation, but, the judge's question, which had a ring of sarcasm, could have been interpreted by the jury to mean that she believed that Defendant got blood on his hand by punching Camarena's face. Moreover, questions of Officer Suazo about the consistency of the injuries and his prior experience with domestic violence victims, and the questions concerning whether the investigation uncovered any other suspects, whether the officer came to any conclusions about the victim's assailant, and whether there was any temporary disfigurement or impairment as a result of victim's

injuries appeared to show a bias in the State's favor. *See Crump,* 97 N.M. at 179, 637 P.2d at 1234; *Sedillo,* 76 N.M. at 275, 414 P.2d at 501.

{21} The metropolitan court judge further erred in the prosecutor's direct examination of Platero. We note that it appears that the metropolitan court judge interrupted Platero's direct examination primarily when the witness either indicated she was confused, or appeared to be confused, as evidenced by her inconsistent responses. The metropolitan court judge could properly question Platero to clarify testimony for the jury or to bring out all of the facts in order to ascertain the truth. *See* Rule 11–611(A); *see also Sedillo,* 76 N.M. at 276, 414 P.2d at 502 (stating that trial judge " 'enjoys the prerogative, rising often to the standard of a duty, of eliciting those facts he deems necessary to the clear presentation of the issues' " (quoting *United States v. Brandt,* 196 F.2d 653, 655 (2d Cir.1952))). However, the metropolitan court judge's final question to Platero about whether she had any doubt whatsoever that Defendant was Camarena's assailant clearly stepped over the line.

{22} When we consider the overall effect of Judge Ashanti's questions and comments throughout the trial, we conclude that her actions exceeded her discretion under Rule 11–614 and denied Defendant a fair trial. *See State v. Henderson,* 1998–NMSC–018, ¶ 6, 125 N.M. 434, 963 P.2d 511 (stating that a defendant is denied a fair trial if "by exhibiting such conduct as 'undue interference,' or unreasonable 'impatience,' or an excessively 'severe attitude,' the judge prevent[s] the 'proper presentation of the cause or the ascertainment of the truth' " (quoting *State v. Gurule,* 90 N.M. 87, 93, 559 P.2d 1214, 1220 (Ct.App.1977))).

*Plain Error*

{23} The State argues that Defendant did not preserve the alleged errors for appeal because he failed to object to the metropolitan court judge's questions as violating Rule 11–614 or otherwise denying him a fair trial. *See State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (stating that in order to preserve an issue for appeal, defen-

dant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon). During trial, Defendant objected to some of the judge's questions as calling for speculation, hearsay, or irrelevant testimony. It was not until the sentencing hearing that defense counsel objected for the first time and moved for a mistrial as a result of the judge's interrogation of Officer Suazo, but only on the basis of the "punched faces" question asked by the judge. Based on our review of the record, it appears that Defendant does not base any of his claims on appeal on objections made at trial.

{24} Defendant argues that defense counsel did object to the metropolitan court judge's questions on grounds of relevancy and hearsay, but essentially acknowledges that the basis for the appeal to the district court and to this Court is different from that raised at trial. In his defense, Defendant contends that in the metropolitan court judge's zeal to elicit evidence on the State's behalf, and as a result of her interruptions, the judge failed to give defense counsel an opportunity to object or to fully articulate the basis for his objections. He contends that, in effect, the metropolitan court judge's conduct forced defense counsel to argue the claims for the first time on appeal. Under Rule 11–614(C), to preserve an issue for appeal, defense counsel does not have to object in front of the jury, but may object "at the next available opportunity when the jury is not present." Defense counsel did not make any timely objections, but waited until the sentencing hearing to object and move for a mistrial.

{25} In the absence of objection or motion at trial, an appellate court may reverse the judgment upon a finding of fundamental or plain error. *See State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). In this case, because the metropolitan court judge's error arose in connection with the eliciting of evidence and because she violated Rule 11–614, we analyze whether the plain error rule applies. *See Lucero,* 116 N.M. at 453, 863 P.2d at 1074 (clarifying that plain error applies to eviden-

784

tiary matters which were not brought to the attention of the trial judge, and not just evidentiary rulings).

{26} Rule 11–103(D) NMRA 1999 discusses plain error and states: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Under the rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights. The Federal Rules of Evidence contain the same rule, and we take guidance from the United States Supreme Court interpretations of the federal rule. *See State v. Torres,* 1998–NMSC–052, ¶ 13, 126 N.M. 477, 971 P.2d 1267.

{27} In the case on appeal, as we have discussed, the metropolitan court judge exceeded the bounds of Rule 11–614 and committed error. When we review the trial in its entirety, it is obvious to us that the metropolitan court judge commented upon the evidence in a partial manner. Hence, the error was plain. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

{28} In ascertaining whether a plain error affects substantial rights, the plain error rule is not as strict as the doctrine of fundamental error in its application. *See Lucero,* 116 N.M. at 453, 863 P.2d at 1074. "Unlike the situation in the case of fundamental error, to find plain error we need not determine that there has been a miscarriage of justice or a conviction in which the defendant's guilt is so doubtful that it would shock the conscience of the court to allow it to stand." *Id.* Nevertheless, the plain error rule is to be used sparingly. *See generally State v. Marquez,* 87 N.M. 57, 61, 529 P.2d 283, 287 (Ct.App.1974). It is an exception to the rule that parties must raise timely objection to improprieties at trial, a rule which encourages efficiency and fairness. *See generally Jackson v. Southwestern Pub. Serv. Co.,* 66 N.M. 458, 473–74, 349 P.2d 1029, 1039–40 (1960). Our Supreme Court has stated that, like fundamental error, plain error requires " 'an injustice that creates grave doubts concerning the validity of the verdict.' " *Lucero,* 116 N.M. at 453, 863 P.2d at 1074 (quoting *State v. Barraza,* 110 N.M. 45, 49, 791 P.2d 799, 803 (Ct.App.1990)). When a plain error affects substantial rights,

the United States Supreme Court has indicated that an appellate court should exercise its discretion and reverse "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 736, 113 S.Ct. 1770 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)); *see also Marquez,* 87 N.M. at 61, 529 P.2d at 287.

{29} We reverse in this case because the metropolitan court judge's errors seriously affected the fairness of the trial. Both the United States and the New Mexico constitutions guarantee a defendant in a criminal case the right to a fair trial. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14. Although this right does not require that the trial be perfect, it does demand fundamental and overall fairness. *See State v. McDonald,* 1998–NMSC–034, ¶ 16, 126 N.M. 44, 966 P.2d 752.

{30} In this case, Defendant had the right to a jury trial because, if convicted, he could be incarcerated. *See* N.M. Const. art. II, § 12. The right to a jury trial entails a determination of guilt or innocence by the jury. That is, the jury acts as the sole fact finder based upon its weighing of the evidence and credibility of the witnesses.

{31} The metropolitan court judge's actions in this case interfered with this role of the jury as independent fact finder. We have reviewed the audio-taped transcript of the trial. The trial was a short one with only two witnesses. The issues were not complex. Nothing about the case demanded substantial judicial intervention to permit the jury to properly perform its duty. But the metropolitan court judge persistently questioned the witnesses and interrupted counsel in a manner that was not always neutral in tone of voice, and which was repeatedly supportive of the State's case. Her actions unmistakenly conveyed to the jury a sense that the judge thought that Defendant was guilty. By doing so, the metropolitan court judge did not permit the jury to exercise its independent fact-finding role.

{32} We note that prior to taking evidence, the metropolitan court judge in-

structed the jury in accordance with Rule 14–101 NMRA 1999 as follows:

> No statement, ruling, remark or comment which I make during the course of the trial is intended to indicate my opinion as to how you should decide the case or to influence you in any way. At times I may ask questions of witnesses. If I do, such questions do not in any way indicate my opinion about the facts or indicate the weight I feel you should give to the testimony of the witness.

We do not consider this instruction as a cure for the metropolitan court's errors. This instruction does not contemplate the type of actions as occurred in this case. *Cf. State v. Stallings,* 104 N.M. 660, 662–63, 725 P.2d 1228, 1230–31 (Ct.App.1986) (holding that general instruction to jury was adequate when judge simply asked clarifying questions. which were neutrally presented). We cannot anticipate that our juries will be able to discern the difference between their own judgment and that of the trial judge when the trial judge has so exceeded the rule in impressing her opinion on the jury. *See State v. Caputo,* 94 N.M. 190, 192, 608 P.2d 166, 168 (Ct.App.1980) (holding that such "instruction in no way advised the jury how to recognize irrelevant questions or told the jury that ... such questions and the answers to them should be disregarded because they were irrelevant"). The problem in this case is that even though there is substantial circumstantial evidence of Defendant's guilt, we are not able to dissect the trial in such a manner so as to isolate the metropolitan court judge's errors from their impact upon the jury. If we were able to do so, we would be able to apply a harmless error analysis. *See State v. Woodward,* 121 N.M. 1, 10, 908 P.2d 231, 240 (1995) (stating error is harmless if it does not prejudice the defendant).

{33} Because the position of the trial judge is so significant at the trial, and because the metropolitan court judge so exceeded the bounds of her discretion under Rule 11–614, the judge's preliminary instruction did not preclude the infectious nature of her actions. Under these circumstances; when the metropolitan court judge has substantially conveyed a position concerning the issues before the jury, the fairness of the trial has been vitiated to the extent that we find plain error.

### Conclusion

{34} We reverse the district court and Defendant's conviction and remand for a new trial with reassignment to a new metropolitan court judge.

{35} **IT IS SO ORDERED.**

ALARID and BOSSON, JJ., concur.