This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36991**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ERNEST PINEDA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Ernest Pineda was convicted of two counts of conspiracy: (1) to commit trafficking (by distribution) (narcotic or methamphetamine), in violation of NMSA 1978, Sections 30-28-2 (1979) and 30-31-20 (2006); and (2) to bring contraband into a jail, in violation of Section 30-28-2 and NMSA 1978, Section 30-22-14(B) (2013). Defendant contends that the district court erred by admitting into evidence recorded co-conspirator statements and the detective's testimony pertaining to the same, and that

insufficient evidence exists to support his convictions. He further contends that one of the conspiracy convictions must be vacated on double jeopardy grounds. The State concedes that the conviction for conspiracy to bring contraband into a jail should be vacated, and we agree. We, however, reject Defendant's remaining arguments and, for the reasons stated, affirm Defendant's conviction for conspiracy to commit trafficking.

**BACKGROUND**

{2}     Much of the State's case rested on a video recording of a jailhouse visit at the Lea County Detention Center (LCDC) between Defendant and his two alleged co-conspirators, Manuel Quiroz and Jessica Anaya, as well as audio recordings of jailhouse telephone calls between Quiroz and Anaya and Quiroz's brother, Dominic. At the time of the events in question, Defendant and Quiroz were inmates at LCDC and residents of the same pod. Also housed in the same pod was an inmate named Jared Pendleton.

{3}     LCDC personnel intercepted a suspicious letter addressed to Pendleton. The letter contained two small baggies of suspected controlled substances, which turned out to be methamphetamine. The baggies were found in a small pouch or pocket that had been affixed to a sheet of paper in the envelope. A few days later, Quiroz telephoned his younger brother Dominic. Quiroz complained to Dominic about their older brother having failed him two weeks straight by not performing an unspecified task. He also asked Dominic if his "home girl," "Jessica A.," could hit up Dominic for "one or one and a half," to which Dominic replied that he was "sitting on . . . nine" and could comply. Quiroz told Dominic that he was "making fuckin' cheddar in here."

{4}     Later that same day, Quiroz telephoned Anaya. Quiroz told Anaya that he already had talked to his little brother. He asked Anaya whether she remembered "how [he] showed [her] exactly how to do it." Anaya hesitantly responded, "Uh . . . yeah. I think so, yeah." Quiroz followed up by saying, "But that's why I want you to come see us . . . so that way I can fill in that 'uh . . . yeah.' " The call ended by Quiroz telling Anaya, "I want you to snatch it up from him tonight and hold onto it. And then fuckin' whenever you come see me tomorrow I can give you the name." Quiroz again phoned Anaya later that night. Defendant then got on the line and confirmed that Anaya was coming to see him the following day.

{5}     The next day, Anaya went to LCDC to visit Defendant. Inmate visits at LCDC are remote, with the visitor sitting at a monitor in the visitor area and the inmate or inmates participating from the pod. The visits are video recorded for review by LCDC authorities. Although, officially, Anaya was visiting Defendant, Quiroz was present and did much of the talking on the inmates' side. Defendant did participate in significant ways, however. Defendant spoke to Anaya as Quiroz held up a piece of paper with the name "Jared Pendleton" written on it, so that it was visible to Anaya; Defendant asked Anaya if she knew that name and, later, if she remembered the name, and added that she had to remember the name. At one point, Defendant held up the paper with Pendleton's name on it so that it was visible to Anaya, while emphasizing the importance of remembering

the name. At another point, Anaya told Defendant to ask Quiroz "how the fuck am I supposed to do that, um . . . ." to which Defendant interjected, "those pictures?" Defendant then asked, "You ain't never seen 'em? You never seen it done?" When Anaya responded by saying that she had been told about it, Defendant said, "Yeah, just like that. That's the only way it can go down." Later, Defendant discussed and helped demonstrate the same method of smuggling that had been used in the intercepted letter—the creation of a small pocket or pouch out of paper that would be attached to a sheet of paper and sent in an envelope addressed to Pendleton. Defendant told Anaya not to put her name on the letter, but to use any name she wanted for the return address. Finally, with regard to mailing the letter, Defendant instructed Anaya, "don't do it today, do it tomorrow" to ensure that the letter would arrive at LCDC on the right day.

{6}     Later the same day, Quiroz called Anaya again and told her "me and him, we're going to switch it up." Quiroz instructed Anaya to mail the letter not to Pendleton, but to "the person [she] came to see"—apparently referring to Defendant. The record does not contain any information about further activity involving Defendant, Quiroz, and Anaya.

{7}     Defendant, Quiroz, and Anaya were charged with conspiracy to commit trafficking controlled substances by distribution and conspiracy to bring contraband into a jail. Quiroz died before his case was resolved. Anaya entered a plea and testified at Defendant's trial. Detective David Miranda, who conducted the investigation, also testified. Defendant testified as well and proceeded on the theory that, while he may have been involved in a conspiracy with Quiroz and Anaya, the conspiracy involved smuggling sexually explicit photographs, not drugs. Apparently unpersuaded by Defendant's theory, the jury convicted Defendant of both counts of conspiracy. Defendant now appeals.

## DISCUSSION

### I.     Statements of Co-Conspirators

{8}     The district court admitted portions of Quiroz's and Anaya's statements in the video and audio recordings pursuant to Rule 11-801(D)(2)(e) NMRA as statements made by co-conspirators in furtherance of a conspiracy. Such statements are not considered hearsay under Rule 11-801(D)(2)(e). *See State v. Bahney*, 2012-NMCA-039, ¶ 52, 274 P.3d 134 (observing that, under Rule 11-801(D)(2)(e), "statements by a co-conspirator of a party during the course and in furtherance of the conspiracy" "are not hearsay" (alteration, internal quotation marks, and citations omitted)). On appeal, Defendant does not discuss or analyze any of the statements individually but, apparently, raises a global challenge to the admission of all the recorded statements. Defendant's argument on this issue is not a model of clarity. As best we can discern, Defendant asserts the following: (1) the district court failed to make a foundational finding that he was part of a conspiracy to commit drug trafficking; and (2) even if it had, there was no evidence apart from the statements themselves to find that Defendant was involved in such a conspiracy. The State addresses Defendant's arguments on the merits but also argues lack of preservation.

**{9}** It is true that a court applying Rule 11-801(D)(2)(e) to co-conspirator statements must determine that there is a "sufficient foundation" establishing the existence of a conspiracy involving the defendant and showing that the co-conspirators' acts and statements were made in the course and in furtherance of that conspiracy. *See State v. Montes*, 2007-NMCA-083, ¶ 11, 142 N.M. 221, 164 P.3d 102 ("The co-conspirator's rule requires the proponent of the evidence to demonstrate: (1) [t]he existence of a conspiracy of which the declarant and the defendant were members, (2) that the statement was made in the course of that conspiracy, and (3) that the statement was made in furtherance of that conspiracy."). It also is true that the co-conspirators' statements alone may not constitute the required foundation; there must be sufficient corroborating facts independent of the statements, although the statements may be taken into consideration. *See State v. Zinn*, 1987-NMSC-115, ¶¶ 32-34, 106 N.M. 544, 746 P.2d 650 (observing that "out of court statements made by a co-conspirator about matters relating to the conspiracy are not admissible unless and until a prima facie case of conspiracy is shown by other independent evidence" but that the court may consider "the statement being offered if the content of the statement itself is reasonably supportive of a conspiracy when taken together with the other independent evidence of the conspiracy" (alteration, internal quotation marks, and citations omitted)). As we discuss, however, Defendant did not object on the grounds he now asserts on appeal and, in fact, affirmatively agreed that the statements fell within the scope of Rule 11-801(D)(2)(e). He therefore failed to preserve these arguments for appeal. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that to preserve an error for appeal, a party must assert the basis of the objection with sufficient specificity to alert the mind of the district court to the claimed error or errors). We explain.

**{10}** Initially, we observe that, contrary to our Rules of Appellate Procedure, Defendant failed to include in his brief "a statement explaining how the issue was preserved in the court below, with citations to [the] record proper [or the] transcript of proceedings . . . relied on." Rule 12-318(A)(4) NMRA. This omission necessitated that we independently review the record to determine whether Defendant had preserved the issue, and we summarize relevant portions of the proceedings from our review.

**{11}** Prior to taking any testimony, the district court conferred with the parties about the video and audio recordings. The district court stated that it had reviewed case law providing that Rule 11-801(D)(2)(e) allowed statements of co-conspirators into evidence as non-hearsay. Defendant contended that the district court was required to "make a ruling based on facts . . . that, in fact, these statements were made by co-conspirators in furtherance of the conspiracy." This, Defendant asserted, required "a statement by statement review." The district court agreed with these propositions. Defendant further stated his concern that a number of the statements in the recordings "have nothing to do with the alleged conspiracy." The State responded that none of the material should be considered hearsay because none of it was being offered for the truth of any matter asserted in the video or audio recordings. The State intended to introduce into evidence eight or nine unredacted jailhouse phone calls, each lasting approximately thirty

minutes, as well as the video recording of the LCDC visit, which apparently already had been redacted.

**{12}** The district court rejected the State's attempt to admit the recordings in their entirety, stating, "I'm not going to let you blanket play a recording without me knowing what's in it . . . and without giving defense counsel opportunity to object." The district court then recessed to review the video and audio recordings. After reviewing portions of the recordings, the district court ruled that it would not allow the State to introduce the video and audio recordings into evidence because most of their content was irrelevant to a conspiracy to commit trafficking or to bring contraband into a jail. The district court noted, however, that some statements—particularly those referenced in the criminal complaint—would be admissible as statements of co-conspirators, but not by way of a wholesale admission of the entire recordings. The district court later clarified that "the statements [it] will allow in are (1) admissions by . . . Defendant and (2) adoptive . . . statements of co-conspirators involving the conspiracy." The district court informed the State that it could play statements conforming with its ruling but would not allow the actual admission of the recordings until they had been properly redacted.

**{13}** Outside the presence of the jury, the State played the first snippet of the video recording that it intended to show the jury. When asked for the defense's position, counsel responded, "I can't object to the portion just played." The district court then gave the defense an opportunity to review the remaining excerpts of the video recording that the State intended to show the jury. Following an approximately twenty-minute recess, defense counsel told the district court that his "only concern" was whether a proper foundation had been laid for Anaya's side of the conversation, arguing that the State's witness had not yet "said anything about this young lady." The district court overruled this objection. The State proceeded to play several portions of the redacted video recording to the jury without any further objection from Defendant. When the video recording was moved into evidence the next day, Defendant had no objection. Noting defense counsel's previous objection was part of the record, the district court admitted the video into evidence.

**{14}** Before trial commenced on the second day, the State informed the district court that it had redacted the recorded telephone calls overnight to include "only relevant portions of the conspiracy." The district court again gave the defense an opportunity to review the redacted audio recordings. After a thirty-minute recess, the State moved to admit the redacted audio recordings. When asked whether there were any objections, defense counsel responded, "No, Your Honor. I believe they're all within the limits you set apart from my objection at the beginning," apparently referencing the foundational objection as to Anaya's identity made the previous day. The district court again noted that Defendant's prior objection was part of the record and admitted the redacted audio recordings into evidence.

**{15}** In sum, Defendant's only objection at trial to the video and audio recordings pertained solely to whether a proper foundation had been laid for the identity of Anaya before her statements were played for the jury. Defendant never asserted, as he does

on appeal, that the requirements of Rule 11-801(D)(2)(e) had not been met. Indeed, the district court ruled that only those statements falling within the rubric of Rule 11-801(D)(2)(e) would be admitted and that the jury would not be permitted to hear any of the statements without first giving Defendant an opportunity to object. The defense spent nearly one hour reviewing the redacted statements. When given the opportunity to object, counsel either stated that he had no objections or affirmatively agreed that the recordings all fell "within the limits" set by the district court. From this, we conclude that Defendant has not preserved the arguments he now advances on appeal. *See* Rule 12-321(A); *Varela*, 1999-NMSC-045, ¶ 25. Because Defendant has not asked us to review his claims for plain error, we do not address the matter further. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 ("[G]enerally, [we] will [not] address issues not preserved below and raised for the first time on appeal."); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that courts normally do not review for fundamental or plain error when not requested by the appellant).

## II.     The Detective's Testimony

**{16}**   The investigating detective, Detective Miranda, was a key witness for the State at trial. Generally speaking, the State played each redacted portion of the video and audio recorded conversations and then asked Detective Miranda to explain to the jury what, given his training and experience, he thought was transpiring. Defendant did not object to any of Detective Miranda's testimony on the grounds that he seeks to raise on appeal. He thus argues that the district court committed plain error in admitting this testimony. *See* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."); *see also State v. Paiz*, 1999-NMCA-104, ¶ 26, 127 N.M. 776, 987 P.2d 1163 (specifying that plain error requires the showing of "(1) error, that is (2) plain, and (3) that affects substantial rights").

**{17}**   Similar to his argument pertaining to the admission of co-conspirator statements, however, Defendant's argument pertaining to Detective Miranda is difficult to ascertain. We perceive Defendant's claim of error to be twofold, i.e., the district court plainly erred by: (1) admitting Detective Miranda's testimony "purporting to decode as drug-trafficking 'lingo' the meaning of common English words used in recorded conversations involving [Defendant] and others without first qualifying [Detective Miranda] as an expert"; and (2) "permitting Detective Miranda to speculate about the meaning of ordinary English words and phrases" as a lay witness. According to Defendant, New Mexico appellate courts have not addressed these separate, but seemingly related, issues. As to the first, Defendant states, "The issue of whether expert testimony is required to interpret alleged drug trafficking lingo and coded jail conversations appears to present an issue of first impression in New Mexico." As to the second, Defendant states, "This case . . . also raises the issue of first impression of what limits Rule 11-701 [NMRA] places on opinion testimony when offered by a lay witness." Consistent with these assertions, rather than relying on New Mexico case law to advance his argument, Defendant primarily relies on

federal cases from the Third, Sixth, Seventh, and Ninth Circuits and state cases from Arizona, Georgia, Maryland, New York, and Virginia.

**{18}** This alone could seemingly defeat Defendant's claim of plain error. At the risk of stating the obvious, to reverse on grounds of plain error the error complained of must have been so plain, i.e., clear or obvious, that the district court should have excluded the evidence on its own motion. *See Paiz*, 1999-NMCA-104, ¶ 27 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)) (holding error plain where it was obvious); *see also Olano*, 507 U.S. at 734 (" 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' ").[1] Given Defendant's concession that the claimed errors he raises are ones of first impression in New Mexico, coupled with his failure to explain why the errors were *so plain* that the district court should have prohibited Detective Miranda's testimony on its own motion, the purported errors he complains of do not appear to be "plain." *See Puckett v. United States*, 556 U.S. 129, 135 (2009) ("[T]he legal error must be clear or obvious, rather than subject to reasonable dispute.").

**{19}** Regardless, we do not resolve the claimed errors on this ground because Defendant has failed to develop his argument adequately. Similar to the first issue, Defendant does not complain of any specific testimony provided by Detective Miranda. Instead, Defendant generically complains (on the one hand) that only an expert may interpret "alleged drug trafficking lingo and coded jail conversations" and (on the other) that Detective Miranda was improperly allowed "to speculate about the meaning of ordinary English words and phrases." The State argues in its answer brief that it was severely impeded in responding to Defendant's argument given "Defendant has not identified any specific testimony as to which objection is intended[.]" This, the State complains, made it impossible to determine whether the testimony was erroneously admitted and, if so, whether Defendant was prejudiced. Although Defendant was not required to file a reply brief, *see* Rule 12-318(c), by not doing so Defendant fails to provide any clarification on this point.

**{20}** We agree with the State's assessment of Defendant's argument. We do, however, observe that Defendant set out several statements by Detective Miranda in the background section of his brief in chief, although it is not at all clear from Defendant's argument if these are the statements about which he complains. But even assuming they are, Defendant utterly neglects to demonstrate, with any type of specificity, why these statements are problematic. Defendant does not specify which of these statements he believes to be impermissible expert opinion or which he believes to be impermissible lay opinion. And Defendant does not tie any of these purportedly erroneously admitted statements to his broad legal arguments. It was Defendant's "burden to point out *clearly and specifically* the error [he] asserts on appeal." *City of Albuquerque v. Westland Dev. Co.*, 1995-NMCA-136, ¶ 34, 121 N.M. 144, 909 P.2d 25 (emphasis added); *see also, e.g., Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("[The a]ppellant must affirmatively

---

[1]Because our plain error doctrine is modeled on the federal plain error standard, *see State v. Marquez*, 1974-NMCA-129, ¶¶ 17-18, 87 N.M. 57, 529 P.2d 283, New Mexico appellate courts take guidance from federal law. *See Paiz*, 1999-NMCA-104, ¶ 26.

demonstrate its assertion of error."). Defendant has not done so here, and we refuse to construct or otherwise clarify Defendant's argument for him. *See State v. Murillo*, 2015-NMCA-046, ¶ 17, 347 P.3d 284 ("We will not construct [the d]efendant's argument on his behalf."); *see also Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments."). We accordingly reject Defendant's arguments pertaining to Detective Miranda's testimony.

**{21}** Furthermore, Defendant's sufficiency of the evidence argument hinges solely on his contention that "Detective Miranda's lay opinion testimony amounted to speculation." Having already determined that Defendant's argument in this regard was inadequately developed to enable our review, we likewise reject Defendant's sufficiency argument that rests on the same undeveloped argument.

## III.   Double Jeopardy

**{22}** The jury convicted Defendant of two separate conspiracies: conspiracy to traffic controlled substances, a third-degree felony, and conspiracy to bring contraband into a jail, a fourth-degree felony. Defendant contends, on double jeopardy grounds, that he may be convicted of only one conspiracy because the State proved only one agreement. The district court acknowledged this point at the conclusion of the trial and ruled that it would vacate the conviction for the lesser offense. For unknown reasons, however, this did not occur. Defendant's judgment and sentence, therefore, reflects two convictions for conspiracy and two sentences for the same, although the sentences run concurrently. The State concedes error and agrees with Defendant that his conviction for conspiracy to bring contraband into a jail should be vacated. After examination of the record, we agree with the State's concession. *See State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (observing that an appellate court is not bound by the state's concession); *State v. Gallegos*, 2011-NMSC-027, ¶ 55, 149 N.M. 704, 254 P.3d 655 (concluding that the Legislature created, with the adoption of the conspiracy statute, "a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed"); *State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[C]oncurrent sentencing does not adequately remedy the imposition of impermissible multiple punishments for a single offense; double jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."). We therefore reverse Defendant's conviction for conspiracy to bring contraband into a jail.

## CONCLUSION

**{23}** Having reversed Defendant's conviction for conspiracy to bring contraband into a jail, we remand to the district court to vacate the same. We otherwise affirm.

**{24}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**