1998-NMSC-018

963 P.2d 511

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Dion HENDERSON, Defendant–
Appellant.**

No. 23475.

Supreme Court of New Mexico.

June 11, 1998.

Monica Munoz, Albuquerque, for Defendant-Appellant.

Hon. Tom Udall, Attorney General, William McEuen, Assistant Attorney General, Santa Fe, for Plaintiff-Appellee.

*OPINION*

FRANCHINI, Chief Justice.

{1} Dion Henderson appeals his convictions for one count of first-degree murder contrary to NMSA 1978, § 30–2–1(A) (1994), and one count of second-degree murder with a firearm enhancement, contrary to Section 30–2–1(B) (second-degree murder) and

NMSA 1978, § 31–18–16(A) (1993) (firearm enhancement). The Defendant raises several claims on appeal including the claim that he was denied a fair trial by the judge's actions and comments. Because we hold that the Defendant was denied a fair trial by the judge's actions and comments, we do not reach the other claims raised in this appeal.

*Facts.*

{2} Jared Newman and Loren Jack were shot and killed by the Defendant at a party on August 28, 1994. Several weeks earlier a friend of the Defendant's, Chris, was beaten up by a friend of the victims. The State proceeded on the theory that the Defendant came to the party to avenge the beating of his friend.

{3} Evidence was introduced that, moments before the shootings, the victims acted aggressively toward the Defendant and one of his friends. The Defense argued that the Defendant shot Newman and Jack in self-defense or in defense of another. The victims were football players who were larger and taller than the Defendant and his friend.

*Discussion.*

■ {4} The judge, during voir dire and during the trial, made comments and acted in a manner which the Defendant claims denied him a fair trial under the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution. During voir dire, the judge made several comments about the judicial system and the case itself. At one point a potential juror stated that he had a problem with the laws of the State of New Mexico since his son's murderer's conviction was overturned. The judge interrupted and explained that, because the man's son had not died within a year of his injuries, the conviction could not stand under the common law. The judge went further, telling the panel that the law had been changed, but that it could not be applied retroactively to this man's son because "people in Santa Fe I guess just don't do that." The judge continued, "I don't want the fact that I am sitting here as a judge to suggest that I'm an apologist or a proponent of our system. In fact,

I've become more and more critical of it myself but it's what we've got."

{5} Our Code of Judicial Conduct requires that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Rule 21–200(A) NMRA 1998. A judge who is critical of the legal system before a panel of prospective jurors, and who implies that the system is determined by the whims of the legislature rather than well-settled principles, is not promoting confidence in the system of which he is a part as the Code requires.

■ {6} We have indicated that a defendant's claim that the judge's conduct denied him or her a fair trial may be sustained by showing that, by exhibiting such conduct as "undue interference," or unreasonable "impatience," or an excessively "severe attitude," the judge prevented the "proper presentation of the cause or the ascertainment of the truth." *State v. Gurule,* 90 N.M. 87, 93, 559 P.2d 1214, 1220 (Ct.App.1977). In this case the judge's comments during voir dire alone do not rise to that level. By themselves they may be considered "expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as ... judges, sometimes display." *Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (holding disqualification was not required). The judge's comments to the juror whose son had been murdered were not proper, but alone they do not warrant reversal.

■ {7} During voir dire the Prosecutor informed the panel that it should not consider the consequences of its verdict and asked whether anyone would be unable to decide the issue of guilt or innocence without considering the consequences. The judge then informed the panel that it

offends my sense of intelligence, some of the things I am supposed to tell jurors, as if it is a blank slate out there .... Also, I am gonna tell you something. If there is a conviction for each count, because I have

no discretion, there is a thirty-year sentence, and that is without good time and without parole. Now the sentences could be imposed concurrently or consecutively, but the reason I share with you the sentence, even though you are told not to consider it, is that the legislature has already imposed sentence. I just sit here as a gatekeeper on these cases where they have taken away the discretion of the court. So I think it is inappropriate and stupid in our system to have mandatory sentences and not tell the jury the consequence of the deal. I expect you as an intelligent concerned citizen who has involved himself in that process to exercise that judgment fully informed.

At the end of the trial, when he charged the jury, the judge instructed them not to consider the consequences of the verdict without explanation or reference to his earlier remarks.

{8} In *State v. Brown*, 1997–NMSC–029, ¶¶ 12–17, 123 N.M. 413, 941 P.2d 494, *cert. denied*, —— U.S. ——, 118 S.Ct. 426, 139 L.Ed.2d 327 (1997), this Court restated the long established rule that the jury must not consider the consequences of its verdict. It is the province of the judge to impose the sentence and that of the jury to determine guilt or innocence. To blur the distinct roles of judge and jury is to manipulate one of the basic principles of our system of justice. Our system is flexible so as to meet the changing needs, and sometimes the changing mores, of our society. But change is accomplished through established procedure. It is made thoughtfully and deliberately, because, as a people, we have determined that this is the manner in which we prefer to implement change in our system. It is not within the powers of a single judge to unilaterally implement change in his or her courtroom. A defendant is entitled to a trial which proceeds according to established rules which can be relied on by the defense.

{9} In reviewing the comments of the judge we conclude that he improperly and intentionally allowed jurors to consider the consequences of the verdict. Based on the judge's comments, it is possible that a juror may have improperly believed it was his or her duty to consider the consequences of the verdict.

{10} In addition to the incidents during voir dire, the Defendant claims that he was denied a fair trial during the cross-examination of one of the State's witnesses. Defense Counsel was cross-examining a friend of the Defendant and the brother of Chris, whose beating the State offered as its theory for the motive behind the killings in this case. Defense Counsel examined the witness about the extent of the injuries to his brother and the State objected that this testimony had been asked and answered. The judge inquired as to Defense Counsel's line of questioning and Defense Counsel responded that he was "cross-examining." During the exchange that followed the judge said:

> Let me just tell you Mr. Harrison, when I ask you where you are going and you say you are cross-examining, I know what part of the trial we are in, and if you want to get smart about it we'll take it outside the presence of the jury .... Don't you go parading around and don't you go mouthing off; now pipe down right now.

Defense Counsel asked if he could get counsel and left the room. Although Defense Counsel was not present, the judge allowed the State to ask the witness approximately a half a dozen additional questions concerning who was being aggressive just before the shootings.

{11} The judge then addressed the Defendant directly:

> Mr. Henderson, your attorney, as far as I am concerned, misbehaved in his addressing the court and did not respond to my questions. Now you have a right to counsel and he has decided to split, and I intend to proceed with the trial, and it may be he is just trying to set this up for some—, I do not know what he is trying to do. So that you will understand, when I asked him where he was going [in his cross-examination], this is the same issue we had gotten into as to how badly somebody got beat up, and once we get passed a layman's description of it like "beat up pretty bad," that was as far as I was going to go with layman testimony. Then I ask him what he is doing and he says "cross-

examining" which is a smart as answer cause I know that, that was what it was his turn to do. Ah, what would you have me do Mr. Henderson?

The Defendant replied, "Well, I really do not know about too much about this stuff." The judge then said:

And I am not prepared to make you your own—, the only reason I let her [the Prosecutor] proceed is that she is going over the same stuff. Ah and I didn't know why he said he was going to go and get counsel, I didn't threaten him with contempt, I just told him to shut up and sit down.

{12} At this point the State suggested that the jury be excused. The judge responded, "I'll give Mr. Henderson a chance to go find Mr. Harrison. I don't even want him to apologize, I just want him to do what he damn well should, and not get flippant with me." Turning to the Defendant the judge said, "Why don't you go find your lawyer and figure out what he wants to do. I don't intend to mistry this thing I'm not going to get into this crap."

{13} The jury was then excused and a discussion was held between the State, Defense Counsel, and the judge. Defense Counsel explained that he had sought legal advice because he was concerned that the jury had been prejudiced against his client by the judge's hostility. The State suggested a curative instruction. The jury was recalled.

{14} After the jury returned, the judge said, referring to the witness, "Where is our guy who wanted to get drunk and get laid?" The judge then addressed the jury:

Stop for a minute and let me say folks this is an intense business, and when we started out I said this a very serious business, and these are very serious charges, and people take their jobs very seriously both for the State and for the Defense, and everybody is on edge, and these things sometimes happen, and just as I instructed you earlier, the fact that the State or the Defense makes objections you should not think they are trying to hide something from you or that they are trying to be obstructionists. Nor if we get a little testy with one another, that is what trial lawyers do. We're back in business now and what just transpired is neither here nor there. It is, at this point, ancient history.

{15} We conclude that, in the incidents just described as well as those during voir dire, the judge behaved and spoke improperly and that his behavior and comments accumulated to deny the Defendant a fair trial. In *State v. Martin* we stated:

A trial judge must exercise great care to assure a criminal defendant a fair and impartial trial. This required fairness and impartiality may often run counter to natural human reaction, particularly where the case involves a heinous crime.... Nonetheless, fairness and impartiality are required of a judge and necessitate that the judge "be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom he deals in his official capacity." (Citations omitted.)

*State v. Martin,* 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (quoting NMSA 1978, Code of Judicial Conduct, Canon 3(A)(3) (Repl. Pamp.1983) (currently codified as Rule 21–300(B)(4) NMRA 1998 (as amended 1995))). The judge transgressed these basic principles.

{16} Many New Mexico cases that examine the standards for determining whether a defendant has received a fair and impartial trial focus on the judge's prejudice in favor of or against a party, or they concern the judge's own interest in the outcome of the litigation. *See generally State v. Fernandez,* 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App.1994) (citing *State v. Hernandez,* 115 N.M. 6, 20, 846 P.2d 312, 326 (1993)). There is no allegation that the judge in this case had a particular interest in the outcome of the trial.

{17} It is also improper for a judge to comment on the evidence. *See State v. Sanchez,* 112 N.M. 59, 65, 811 P.2d 92, 98 (Ct.App.1991). In *Sanchez,* our Court of Appeals ordered the defendant's conviction reversed and remanded for a new trial after the judge referred to a witness's testimony as "worthless." *Id.* It is improper for a judge to comment on the credibility of a witness. *Id.* at 66, 811 P.2d at 99. In refer-

ring to a witness as the "guy who wanted to get drunk and get laid," the judge improperly conveyed to the jury that this witness's credibility was in question.

{18} The State argues that, even if the judge's comment was about the witness's credibility, the comment would have the effect of damaging the State's case and assisting the defense. We do not agree. The witness testified that he was a friend of the Defendant, and, although he was called by the State, the jury's perception of him could directly affect their view of the case and indirectly affect their view of the Defendant's credibility. It may not be possible to prove the effect of the judge's comment on the jury, but it is the rule that "[d]uring the course of a trial a judge should not make any unnecessary comments or take any unnecessary action which *might* prejudice the rights of either of the parties." *State v. Caputo*, 94 N.M. 190, 192, 608 P.2d 166, 168 (1980).

{19} We note that it was improper for the judge to allow the State to question a witness while Defense Counsel was out of the room. However, because we are reversing on other grounds, and because we do not believe this issue will arise on retrial, we do not analyze it here.

### Conclusion.

{20} Judges have wide discretion in controlling the proceedings before them and a defendant is not entitled to a perfect trial. In this case, however, we hold that the behavior and comments made by the trial judge improperly deprived the Defendant of a fair trial. We reverse and remand for a new trial.

{21} **IT IS SO ORDERED.**

BACA and SERNA, JJ., concur.