This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     **NO. 29,972**

**DANIEL M. MURRELL,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlik, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

On appeal, Defendant raises claims of error relating to evidentiary rulings and makes one claim of prosecutorial misconduct. We affirm.

**BACKGROUND**

On the night of September 25, 2008, officers from the Clovis Police Department were dispatched to a residence in Clovis, New Mexico, after receiving a request for immediate assistance from an unidentified female caller. At that time, Vickie Kirven, her 21-year-old daughter Victoria Kirven, and Defendant—Victoria's 43-year-old boyfriend—all lived at the residence.

When they arrived at the home, the officers were initially told by Vickie that the problems that precipitated the 911 call had been resolved. The officers observed that Victoria's appearance—she had a reddish contusion on the left side of her face—and demeanor suggested otherwise. Victoria, who was crying and holding the area of her face that was injured, explained that Defendant had assaulted her and motioned with her head in a manner suggesting that she wished to speak with one of the officers privately. Officer Paul Crowe escorted Victoria to a secluded portion of the household.

Victoria provided the following explanation of events to Officer Crowe: Defendant demanded sex, and Victoria either refused or responded too slowly and so

Defendant hit her. Defendant then threatened to "burn her bitch ass up" using flammable material in a gas can, fondled her breast, and again demanded she remove her clothing. She managed to escape to another room; however, Defendant followed her, continued to verbally threaten her with violence, and finally tackled her onto a toddler daybed which partially broke. Victoria picked up a piece of wooden railing that had broken off the daybed and hit Defendant on the head with it.

Victoria expressed concern that Defendant might still be in the residence, but the officers were unable to find him. Defendant was later charged with kidnapping, attempt to commit criminal sexual penetration, assault with intent to commit a violent felony against a household member, and battery against a household member.

At Defendant's jury trial, Victoria and Officer Crowe testified and gave accounts of the events of September 25, 2008, consistent with that described above. Victoria's mother also testified and stated the following: Defendant had gotten angry about a joke, Victoria started fighting, the parties fell on the bed where Victoria started hitting Defendant, and the bed broke. Either Victoria or her mother called the police. Victoria's mother said that she did not see anything that occurred in the bedroom and that even though she felt threatened by Defendant, she did not tell this to the police.

Defendant testified on his own behalf and gave a conflicting account. He

3

denied the allegation that he demanded sex from Victoria and then violently assaulted her when she either rejected or responded too slowly to his demands. Rather, he claimed that Victoria had been the aggressor. He explained that Victoria became upset because she had learned that he had been with another woman, and she pushed him onto the daybed, causing it to break. Victoria then picked up the piece of railing and hit him, at which point he hit her back. Defendant explained that he fled the scene because Victoria's mother demanded that he leave. It was his position at trial that Victoria lied about the events of the evening to get back at him for being unfaithful to her.

The jury found Defendant guilty of false imprisonment, a lesser included offense of kidnapping; attempted criminal sexual contact; and battery against a household member. Defendant was acquitted of assault with intent to commit a violent felony against a household member. He was sentenced on this matter and two other outstanding criminal matters, and he appeals raising issues only as to the convictions stemming from the incidents involving Victoria.

**DISCUSSION**

On appeal, Defendant raises three evidentiary issues. His remaining argument concerns prosecutorial misconduct. We address these matters in turn.

**I.      Evidentiary Issues**

**A.    The District Court's Limit on Defendant's Cross-examination of the Victim Was not Error**

Defendant claims that the district court erred in precluding him from asking Victoria whether, at the time of trial, she was incarcerated on charges of assaulting the other woman in Defendant's life. Defendant appears to be making two arguments here. In the first case, Defendant points to Victoria's testimony on direct during which she stated that she did not still do drugs. Defendant complains that by not being allowed to "get out the fact that Victoria was in jail" during trial, the jury could have inferred that she had cleaned up her act when in reality she was in jail and not allowed to do drugs. In the second part of this argument, Defendant argues that limiting his cross-examination regarding the pending charges prevented him from developing his defense that Victoria's accusations against him were lies based on her jealousy of the other woman.

We turn to the transcript. On cross-examination, Victoria admitted that she knew Officer Crowe from previous encounters when she had gotten in trouble. Defendant then indicated that he wanted to question Victoria about a couple of Victoria's encounters for the purpose of impeachment. The State wanted to review the specific encounters before the questions were asked, so the district court instructed counsel to confer. A bench conference followed regarding the admissibility of this evidence. The State explained its objection:

State: Okay. There are several counts. One's burglary with criminal damage, larceny; one's breaking and entering, battery, criminal damage. My argument is that these aren't crimes of dishonesty. These aren't fraud, these aren't worthless checks. These are different types of crimes than the ones that are contemplated by the prior bad acts that go to impeaching somebody's credibility . . . those ones have crimes of dishonesty and these do not have that . . .

Court: Show me

State: . . . Burglary and larceny fit the crime.

Court: Of course they go to the crime.

State: What about this one?

Judge: Who has this one?

Defendant: Your honor, if I could just point out that the reason we want to bring this in since it goes to her motive to make up a story which is what they were fighting about in the first place. She found out that he was sleeping with [the other woman], she went and beat [the other woman] up and then she denied that she knew about this in her interview and it really goes to our defense that she's a jealous woman.

The district court did allow Defendant to inquire for impeachment purposes about those crimes involving moral turpitude but disallowed questions about the pending criminal charges involving the other woman as going "a little far [afield]."

We observe that the brief in chief makes it appear that the charges regarding moral turpitude were going "a little far afield." This is not the case. Defendant was allowed to question Victoria on the burglary and larceny charges. Although the brief in chief states that Victoria denied the charges, this is not the case. When asked whether she was aware that she had been charged with these two crimes, Victoria stated that she understood that she had been "accused of it, not charged with it." We

6

understand this answer to mean that Victoria understood that these charges were pending. We bring this up because it is important that counsel for Defendant provide accurate information in the brief. *Hartman v. Texaco Inc.*, 1997-NMCA-032, ¶ 27, 123 N.M. 220, 937 P.2d 979 ("The appellate rules are designed . . . to obtain briefs that provide this Court with an organized, accurate statement of the material necessary to consider the issues raised on appeal . . . .").

As to the argument, Defendant, in his brief in chief, fails to develop his argument regarding the separate issue of Victoria's incarceration. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court will not review an argument that is inadequately developed). As to the claim that Defendant was denied a fair trial because the district court proscribed his cross-examination of Victoria regarding charges related to the other woman, Defendant uses a shotgun approach and points to error based on Rules 11-403 NMRA, 11-404(B) NMRA, 11-607 NMRA, and on a violation of due process and the Confrontation Clause. The State argues that the evidence was properly excluded under Rule 11-608(B) NMRA. The State also contends that in any case, it was cumulative, and asserts that if there was an error, exclusion of this evidence was harmless.

The only argument advanced by Defendant that appears to apply to this issue is a violation of the Confrontation Clause. "The Sixth Amendment to the United

States Constitution provides that, in criminal prosecutions, the accused shall have the right to confront the witnesses against him." *State v. Martinez*, 1996-NMCA-109, ¶ 9, 122 N.M. 476, 927 P.2d 31 (internal quotation marks and citation omitted). The Confrontation Clause is applicable to the states through the Fourteenth Amendment. *Id.* The inability to cross-examine a witness about a motive to lie can offend the right to meaningful confrontation. We agree with Defendant that the "right to fully cross-examine, particularly when the evidence sought to be developed is such as would allow inferences of motive to lie" is protected by the federal and state constitutions. *State v. Baldizan*, 99 N.M. 106, 108, 654 P.2d 559, 561 (Ct. App. 1982). However, while defendants are entitled to a fair trial, they are not necessarily entitled to a perfect one. *State v. Barr*, 2009-NMSC-024, ¶ 63, 146 N.M. 301, 210 P.3d 198. "Judges have wide discretion in controlling the proceedings before them and a defendant is not entitled to a perfect trial." *State v. Henderson*, 1998-NMSC-018, ¶ 20, 125 N.M. 434, 963 P.2d 511.

Our standard of review for an evidentiary issue is well settled.

> We examine the admission of evidence for abuse of discretion. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason.

*State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641 (internal

8

quotation marks and citation omitted). However, "Confrontation Clause claims are issues of law that we review de novo." *Martinez*, 1996-NMCA-109, ¶ 14.

"[T]he Confrontation Clause does not give a defendant an absolute right to cross-examine a witness[.]" *State v. Stephen F.*, 2008-NMSC-037, ¶ 7, 144 N.M. 360, 188 P.3d 84. But the right to confront is a "critical limitation on the [district] court's discretion to exclude evidence." *Id.* ¶ 31 (internal quotation marks and citation omitted). When faced with an evidentiary question regarding the Confrontation Clause, the district court should balance a defendant's right to cross-examine against the risk factors associated with admission of the evidence—the probative value of the evidence sought to be introduced against the risk its admission may entail. *See State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254. The district court holds broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, or interrogation that is repetitive or only marginally relevant. *State v. Gonzales*, 1999-NMSC-033, ¶ 22, 128 N.M. 44, 989 P.2d 419. This discretion includes the mode of interrogating witnesses. Rule 11-611(A) NMRA (describing the court's discretion in controlling the trial including the mode of interrogating witnesses).

In this case, the district court determined that cross-examination on the pending charges would stray too "far afield." We assume this was the court's determination

9

based on the balancing required under Rule 11-403. It appears that Defendant is arguing that the district court erred in balancing prejudice versus probative value of the information that would support Defendant's theory that Victoria was lying about the events of the evening in question because of her jealousy. The State counters that permitting Victoria to be questioned on the pending charges would be prejudicial because it would possibly subject her to incriminating herself. On appeal, Defendant does not develop what he would have elicited had he been allowed to ask questions about the other charges and how this prejudiced his case. *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Accordingly, we see no error in the district court's ruling.

Moreover, the district court's ruling did not prevent Defendant from presenting his defense. We agree with the State that additional evidence regarding Defendant's theory that Victoria lied because Defendant was seeing another woman would only be cumulative, and therefore it was properly excluded. *See State v. Lovato*, 91 N.M. 712, 715, 580 P.2d 138, 141 (Ct. App. 1978) (concluding that the district court, in its discretion, could properly exclude cumulative testimony). Defendant did not file a reply brief, so there is no rebuttal to the State's position. We look to the trial transcript. During his testimony, Defendant established his theory—he testified that he had been unfaithful with the other woman and that Victoria was upset. During

Victoria's testimony, she admitted that she had written Defendant letters in which she indicated that she was jealous of other women and directed Defendant not to talk to them, but Victoria also denied being jealous based on any cheating on Defendant's part, and she stated that Defendant had told her that he had not cheated on her with the other woman. When asked about a letter in which she had forgiven the other woman, Victoria explained that she had forgiven her for something different. Clearly, the jury was aware of Defendant's theory that Victoria had a motive to lie based on his infidelity. The jury was also aware that Victoria denied knowing about any unfaithfulness on Defendant's part. The district court's ruling about the pending charges did not preclude Defendant from presenting his defense to the jury. Based on the arguments before us, we conclude that the district court properly excluded the evidence of pending charges related to the other woman. Thus, there was no violation of Defendant's right to cross-examine a witness under the Confrontation Clause.

**B.      Defendant's Argument Regarding Bad Acts Evidence is Inadequate**

Defendant next claims that the district court erred in permitting the State to inquire about Defendant's past offenses. At trial, Defendant testified on his own behalf. During cross-examination, the State asked Defendant whether he had previously been convicted of any felony offenses. The State asked this question despite the fact that it did not have certified copies of Defendant's prior convictions

11

for purposes of impeachment. Defendant objected, and a bench conference ensued during which Defendant argued that the State could not inquire about Defendant's criminal history if it lacked adequate records to prove Defendant's convictions. The court disagreed and ruled that the State could question Defendant about any previous convictions that involved moral turpitude but could not impeach Defendant with those convictions since the State did not have certified copies. The State proceeded to ask Defendant whether he had been accused of several crimes of dishonesty in 2003 and 2004, including issuing worthless checks, committing fraud, and distributing encumbered property, and also asked whether Defendant faced any other pending criminal charges for offenses involving dishonesty. Defendant denied having been charged in the manner the State described and stated that he had one criminal matter pending, but then admitted that he was uncertain about his pending matters. The State asked whether Defendant would be surprised to learn that he had four pending criminal matters involving dishonesty to which Defendant stated that this did surprise him.

We have reviewed the arguments underlying this particular evidentiary claim numerous times, and we are unable to make sense of them. Defendant begins by asserting that "[t]he [district] court's admission of evidence of a past offense not allowed by these rules was prejudicial error." At no time, however, does Defendant

12

discuss or identify the specific evidentiary rule that was allegedly violated. Rather, Defendant makes repeated allusions to Rule 11-403 and the issue of prejudice, refers generally to the concept of "prior bad acts evidence," and then makes a passing reference to Rule 11-404 in a block quote. While we cannot be certain, it appears that Defendant intended to argue that the State was precluded from questioning Defendant about his criminal history without adequate proof of Defendant's convictions. This was the argument below, the heading on page sixteen of the brief in chief suggests that this is the issue on appeal, and several unconnected sentences throughout this section of the brief also indicate as much.

In our view, this argument implicates both Rule 11-609 NMRA and Rule 11-608 and the New Mexico cases construing these rules including, but not limited to, *State v. Herrera*, 102 N.M. 254, 259-60, 694 P.2d 510, 515-16 (1985), *State v. Robinson*, 99 N.M. 674, 675-77, 662 P.2d 1341, 1342-44 (1983), *State v. Casillas*, 2009-NMCA-034, ¶¶ 43-44, 145 N.M. 783, 205 P.3d 830, and *State v. Wyman*, 96 N.M. 558, 559-60, 632 P.2d 1196, 1197-98 (Ct. App. 1981). Defendant, though, fails to explain how these rules apply to the case before us, and thus he fails to present us with adequate argument. As such, we decline to further review the matter. *See Headley*, 2005-NMCA-045, ¶ 15 (stating that this Court will not review an argument that is inadequately developed).

## II.     Prosecutorial Misconduct

Lastly, Defendant argues that prosecutorial misconduct occurred at trial. He asks us to reverse his convictions and dismiss the charges. The parties do not agree about the standard of review we apply to a claim for prosecutorial misconduct. This disagreement is understandable. In *State v. Trujillo*, our Supreme Court stated the following:

> When an issue of prosecutorial misconduct is properly preserved by a timely objection at trial, we review the [district] court's ruling on this issue under the deferential abuse of discretion standard because the [district] court is in the best position to evaluate the significance of any alleged prosecutorial errors. The [district] court's determination of these questions will not be disturbed unless its ruling is arbitrary, capricious, or beyond reason.

2002-NMSC-005, ¶ 49, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). Subsequently, in *State v. McClaugherty*, 2008-NMSC-044, ¶ 39, 144 N.M. 483, 188 P.3d 1234, the Court stated that "a prosecutorial misconduct claim presents a mixed question of law and fact. The appellate court will defer to the district court when it has made findings of fact that are supported by substantial evidence and reviews de novo the district court's application of the law to the facts." We need not address this apparent inconsistency because, regardless of which standard applies, it is clear to us that prosecutorial misconduct claims are subject to the rules of preservation. *See State v. Boergadine*, 2005-NMCA-028, ¶ 30, 137 N.M. 92, 107 P.3d

14

532 (declining to review a claim of prosecutorial misconduct because the issue was not preserved). Defendant has failed to indicate where and how the issue of prosecutorial misconduct was preserved at trial. Our careful review of his arguments leads us to the conclusion that the issue was never raised. The basis of Defendant's prosecutorial misconduct claim on appeal appears to be that the State should not have asked Defendant about his prior convictions unless it had adequate proof of Defendant's criminal history. This argument is identical to Defendant's second evidentiary issue. Defendant did sufficiently object to preserve the evidentiary issue. We cannot, however, construe Defendant's evidentiary objection as an objection of prosecutorial misconduct. *See State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862 (discussing prosecutorial misconduct and stating that our rules of preservation require a "specific and timely objection").

When an issue is not preserved, this Court may raise the issue itself to consider reversal. *State v. Castro*, 2002-NMCA-093, ¶ 2, 132 N.M. 646, 53 P.3d 413. "When the [district] court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict

that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citations omitted). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *Castro*, 2002-NMCA-093, ¶ 2 (internal quotation marks and citation omitted). Here, we cannot say that the actions of the prosecutor were so egregious and prejudicial as to have deprived Defendant of a fair trial. While it did not have certified copies of Defendant's prior convictions, the State had a good-faith basis for inquiring about Defendant's past convictions involving dishonesty, and the line of questioning produced no prejudice against Defendant. Therefore, no fundamental error was committed involving prosecutorial misconduct.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

16

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**