This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38945**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANCES FRANK,**

Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Maria Dominguez, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}**     Following a bench trial, Defendant Frances Frank was convicted of driving while under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(C)(1) (2016).[1] In this opinion, we focus on Defendant's contention that

---

[1]Section 66-8-102(D)(3) was held unconstitutional by this Court in *State v. Storey*, 2018-NMCA-009, ¶ 32, 410 P.3d 256. Subsection 66-8-102(D)(3) refers to aggravated DWI, which is not at issue here, and *Storey* did not affect the constitutionality of the subsection we reference in this opinion.

during the bench trial, the metropolitan (metro) court's cumulative conduct demonstrated bias in favor of the State and deprived Defendant of a fair trial. We affirm.

**BACKGROUND**

**{2}**     Derek Keen awoke at around midnight to the sound of a loud crash outside his window. Mr. Keen looked out the window, saw a vehicle crashed into a trailer, and within three to five minutes, Mr. Keen was dressed and outside to see what had happened. On his way outside, Mr. Keen stopped and told Stephen Durkin—who was asleep in a nearby room—that a vehicle had crashed into his trailer. Mr. Keen continued outside and spotted the crashed vehicle, occupied by a female in the driver's seat and a male in the passenger seat. While he was outside, Mr. Keen also observed the male in the passenger seat get out and walk to the other side of the vehicle. Mr. Durkin, a retired law enforcement officer, also came outside and observed a female in the driver's seat. The criminal complaint alleged that Defendant was the female in the vehicle and charged her with DWI.

**{3}**     At the bench trial, the parties disputed whether Defendant was the driver of the vehicle when it crashed into the trailer. The evidence at trial established that Mr. Keen and Mr. Durkin told police that Defendant was the driver during the investigation, and Mr. Durkin identified Defendant as the driver at trial. Mr. Keen did not identify Defendant in court, but he did testify that the female in the car was the driver. Defendant's boyfriend testified that he was driving and explained that Defendant was in the driver's seat after the crash because she was "trying to see if the car would still start." Similarly, Defendant told an officer at the scene that she moved to the driver's seat after the crash because she wanted to go home. And during trial, the defense maintained that the witnesses who identified her as the driver did not see her initial move from the passenger seat to the driver's seat.

**{4}**     The metro court found Defendant guilty of DWI on two bases. The metro court first determined that Defendant had the intent to drive away from the scene and therefore engage in future intoxicated driving; and second, the metro court found "beyond a reasonable doubt [Defendant] was in the driver's seat at the time of the accident" and had driven while intoxicated to the scene of the crash. This appeal followed.

**DISCUSSION**

**{5}**     Defendant argues that the conviction should be reversed because (1) Mr. Durkin's testimony that Defendant was the driver at the time of the crash was not appropriate lay opinion; and (2) on multiple occasions, the metro court's conduct during trial demonstrated bias in favor of the State and resulted in cumulative error. We briefly address Defendant's evidentiary argument before considering cumulative error.

**I.     We Need Not Resolve Defendant's Evidentiary Issue**

**{6}** Defendant argues that Mr. Durkin's identification of Defendant as the driver was based on law enforcement expertise, which required admission under Rule 11-702 NMRA, and the metro court improperly admitted Mr. Durkin's opinion as lay witness testimony under Rule 11-701 NMRA. We conclude, however, that Defendant's argument disregards the metro court's alternative basis for conviction—that Defendant's actions demonstrated an intent to drive in the future despite the inoperability of the vehicle after the crash. *See State v. Mailman*, 2010-NMSC-036, ¶ 19, 148 N.M. 702, 242 P.3d 269 (leaving the jury to determine as a factual matter whether "an accused lacked the general intent to drive so as to endanger any person, based on the overt acts taken by the accused," including as a factor the inoperability of the vehicle). Our Supreme Court has explained that where a general verdict is based on alternative factual theories, if the evidence does not support one theory but supports the other, the verdict may stand. *See id.* ¶¶ 11-12. Mr. Durkin's identification of Defendant as the driver was relevant only to the "past driving" basis for conviction. Because the challenged testimony implicates only the past driving conviction and Defendant mounts no challenge to the future driving conviction,[2] we need not consider whether the admission of Mr. Durkin's testimony as lay opinion was by itself reversible error.

## II.    The Cumulative Conduct of the Metro Court Did Not Deprive Defendant of a Fair Trial

**{7}** Under the doctrine of cumulative error, we must reverse a defendant's conviction "when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. Defendant contends that in the aggregate, the metro court's "pattern of questioning evinced a partiality for the State" and prevented a fair trial. We assess each alleged error, because generally, "[w]here there is no error to accumulate, there can be no cumulative error." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (internal quotation marks and citation omitted); *see Martin*, 1984-NMSC-077, ¶ 17 (explaining that if no errors occurred, "or if the record as a whole demonstrates that a defendant received a fair trial," the doctrine of cumulative error cannot be invoked). Defendant maintains that the following three instances of conduct by the metro court demonstrate cumulative improper conduct that establish bias in favor of the State: (1) the metro court's questioning of Mr. Keen about the location of the incident; (2) the prompting of and reliance on improper hearsay testimony from Mr. Keen; and (3) the admission of Mr. Durkin's testimony as lay witness testimony, as opposed to expert opinion. We emphasize that our inquiry is into whether the metro court's cumulative conduct demonstrated bias that deprived Defendant of a fair trial.

**{8}** Before analyzing Defendant's specific assertions of bias, we pause briefly to consider how to evaluate judicial conduct for bias in a bench trial. Defendant relies on cases addressing the impact of judicial bias in the jury trial context, while the State

---

2Defendant challenged the future driving conviction in the docketing statement, but did not include the issue in its briefing. Issues not briefed are deemed abandoned. *State v. Henderson*, 2006-NMCA-059, ¶ 1, 139 N.M. 595, 136 P.3d 1005 (noting that "[a]ll issues raised in the docketing statement but not argued in the briefs have been abandoned" (internal quotation marks and citation omitted)).

suggests that these cases should not apply when the judge acts as the fact-finder. We find the jury trial cases instructive. When determining whether a judge's conduct denied a defendant a fair trial, we consider whether the judge's comments or actions "prevented the proper presentation of the cause or the ascertainment of the truth." *State v. Henderson*, 1998-NMSC-018, ¶ 6, 125 N.M. 434, 963 P.2d 511 (internal quotation marks and citation omitted). In the jury trial context, we apply this principle by evaluating whether the judge's conduct had an improper impact on the jury. *See id.* ¶ 9 (determining that the judge's comments could have led a juror to "improperly believe[] it was his or her duty to consider the consequences of the verdict"); *State v. Paiz*, 1999-NMCA-104, ¶ 17, 127 N.M. 776, 987 P.2d 1163 (noting that questioning by a judge "risks giving an impression to the jury that the judge favors a particular position of the parties"). Despite the common application of this standard in cases with a jury as fact-finder, we see no reason why the broad definition of bias—that a judge's conduct may not "prevent[] the proper presentation of the cause or the ascertainment of the truth"— would not apply in the bench trial context. *Henderson*, 1998-NMSC-018, ¶ 6 (internal quotation marks and citation omitted). With this in mind, we return to consider the conduct that Defendant asserts undermined the right to a fair trial.

## A. The Metro Court's Questioning of Mr. Keen Did Not Demonstrate Bias

**{9}** Defendant claims the metro court improperly engaged Mr. Keen with leading questions in order to establish where the crime occurred. After cross-examination the metro court engaged Mr. Keen as follows:

Court: What was the address of this?

Mr. Keen: 1311 Lead Avenue southwest. Do you need the zip code as well?

Court: No, is that within the city limits of Albuquerque in Bernalillo County, New Mexico?

Mr. Keen: It is.

Court: Is that right there by Lead and University?

Mr. Keen: No, it's further down. Lead and 14th, it's closer to the zoo.

Court: Oh, other side.

Mr. Keen: Other side.

Court: Other 13 Lead, gotcha. Okay.

Defendant concedes that this questioning "would not alone constitute error," but nevertheless claims that when "considered as part of an overall pattern of bias in favor

of the State's case," it shows that the metro court exceeded the scope of Rule 11-614 NMRA.

**{10}**  Under Rule 11-614, the metro court has discretion to call and examine witnesses, subject to the parties' cross-examination and objection. *Id.* This discretion permits the court to "question witnesses to clarify testimony for the jury or to bring out all of the facts in order to ascertain the truth." *Paiz*, 1999-NMCA-104, ¶ 17. A court may examine a witness "to complete the record," *cf. State v. Tsosie*, 2022-NMSC-017, ¶ 57, 516 P.3d 1116 (explaining that Rule 11-614(B) permits a court to examine a witness to develop a complete record of facts necessary to ascertain the testimonial nature of statements), and has discretion to ask "questions of a witness as long as an attitude of impartiality is preserved," *State v. Rodriguez*, 1988-NMCA-069, ¶ 11, 107 N.M. 611, 762 P.2d 898.

**{11}**  Defendant does not explain how the questions asked undermined the metro court's impartiality, *see id.*, or "prevented the proper presentation of the cause or the ascertainment of the truth" by displaying "undue interference, or unreasonable impatience, or an excessively severe attitude," *Henderson*, 1998-NMSC-018, ¶ 6 (internal quotation marks and citation omitted). The metro court's questions regarding location were not excessive or even extensive, nor were they asked in an improper tone. *See Paiz*, 1999-NMCA-104, ¶ 31 (holding that the metro court's persistent questions and non-neutral tone of voice undermined the jury's independence as fact-finder, showed support for the state, and conveyed the judge's view that the defendant was guilty). In our view, the metro court's questions were not combative or improper and did not transgress the duty to conduct a fair and impartial trial. *See Henderson*, 1998-NMSC-018, ¶¶ 9-15 (relying on the court's accumulated comments and behavior to hold that the court denied the defendant a fair trial). Rather, the metro court's questioning was proper and displayed no "bias for or against either party." *Crownover v. Nat'l Farmer's Union Prop. & Cas. Co.*, 1983-NMSC-099, ¶ 4, 100 N.M. 568, 673 P.2d 1301; *see also Henderson*, 1998-NMSC-018, ¶ 16 (observing that "[m]any New Mexico cases that examine the standards for determining whether a defendant has received a fair and impartial trial focus on the judge's prejudice in favor of or against a party, or they concern the judge's own interest in the outcome of the litigation").

## B.  The Metro Court Did Not Elicit or Rely on Hearsay Testimony

**{12}**  Next, Defendant asserts that the metro court improperly elicited hearsay testimony from Mr. Keen and then relied on the improperly elicited hearsay to convict Defendant. Specifically, during his testimony, Mr. Keen explained that when he first approached the vehicle he asked, "Is everyone okay?" The metro court followed up with, "Who did you say that to?" Mr. Keen stated that he was speaking to the male occupant seated in the passenger seat, but could hear the female occupant talking. The metro court then asked, "Could you tell what she was saying?" and Mr. Keen said, "The primary thing that I do remember her saying is that 'I can't take the blame for this' and then, 'I can't believe we did this.' Those were the only two statements which I heard."

Defendant focuses on the final statements attributed to the female occupant and argues those statements are hearsay erroneously elicited by the metro court.

**{13}** Again, we focus on whether the metro court's conduct shows bias in favor of the State. The metro court's questions did not "prevent[] the proper presentation of the cause or the ascertainment of the truth." *Henderson*, 1998-NMSC-018, ¶ 6 (internal quotation marks and citation omitted). The metro court asked no improper question—the witness offered the specific statement unprompted, and as the State argues, the out-of-court statement attributed to Defendant is not hearsay. *See* Rule 11-801(C) NMRA (defining hearsay); Rule 11-801(D)(2)(a) (excluding from the definition of hearsay an opposing party's statement that is offered against the opposing party). The metro court's questions instead were appropriate to clarify Mr. Keen's testimony "or to bring out all of the facts in order to ascertain the truth." *Paiz*, 1999-NMCA-104, ¶ 17. Examination of the metro court's conduct that led to testimony about Defendant's statement therefore reveals no bias.

**C.      The Admission of Mr. Durkin's Identification Testimony Did Not Reflect Bias by the Metro Court**

**{14}** Last, Defendant argues that the metro court's admission of Mr. Durkin's testimony as lay opinion, rather than expert testimony, displayed bias in favor of the State. Mr. Durkin's testimony began with the State eliciting information from him about his experience with law enforcement, including that he completed approximately eighty hours in a collision investigation training course at some point in his career. Defendant objected on relevance grounds. The metro court overruled the objection and stated that Mr. Durkin had "knowledge and experience that may play into the court's need for findings of fact." Mr. Durkin continued and testified about his observations. He explained that when he first got outside to the accident scene he "immediately went over" to the vehicle, asked the occupants if they were injured, and "tried to assess the amount of injury they may or may not have had at that point." Mr. Durkin stated that when he reached the crashed vehicle, Defendant was seated in the driver's seat. He explained that he "first went to the passenger side of the vehicle that was closest to [him from the house,] talked to that individual and then went around the car and talked to the driver." After that, Mr. Durkin testified that Defendant "got out of the driver's seat in the vehicle, went around the back of the vehicle and exchanged seats with the passenger." The following exchange clarified Mr. Durkin's observations:

> State: Did law enforcement ask you about who was driving the vehicle?
>
> Mr. Durkin: Yes.
>
> State: And how did you answer that question?
>
> Mr. Durkin: I pointed out to them that the person who was sitting in the right front passenger seat of the vehicle was actually driving the vehicle at the time that I made contact.

State: And who was that person?

Mr. Durkin: The lady I had described just before, the one of the three women at that desk who is not wearing glasses.

State: And just to be clear at this point she was in the passenger side of the vehicle?

Mr. Durkin: Yes.

The State then asked Mr. Durkin why he believed Defendant was the driver, and Defendant objected.

State: And why do you believe that she was driving the vehicle when the vehicle crashed even though you did not see the actual crash?

Defense: Objection, question calls for speculation.

Court: Overruled. I'll take it as his opinion, but I overruled the objection so he can answer.

Mr. Durkin: Do you want my opinion or my, from what I saw at that scene?

Court: Yes.

Mr. Durkin: Thank you. In my experience investigating collisions, and understanding, getting to a scene shortly after collision happens, some of the things you immediately are looking for are trying to identify who was driving the vehicle, if in fact there are multiple individuals in the vehicle. At the same time, you're, in my experience, individuals are also, they're dazed after a violent collision, and this was a very violent collision, and so part of that assessment—even though I wasn't there at the time of the collision, [Defense attempts to object but Mr. Durkin finishes the statement] I was there immediately after.

Defense: I apologize. Objection your honor, this is not responsive to the answer itself, to this particular situation and this particular car.

Court: Overruled.

State: Please go on.

Mr. Durkin: Again, as a police officer I'm not at the scene of the collision, I arrive there shortly thereafter and then make that determination either by initial observation at the scene or through a mode of investigation. In this particular case, although I technically was a victim, I still, after my initial

assessment of the potential injuries to the individuals in the car, I then approached it in a different manner [Defense objects on narrative testimony, Court lets Mr. Durkin finish] I then, after that, I then approach it as a matter from the background of my professional experience.

Defendant argues that the admission of Mr. Durkin's opinion was "improper" because the metro court failed to treat Mr. Durkin's testimony as expert opinion despite indicating interest in his experience, and as a result, "Mr. Durkin was the only witness to testify he was 'absolutely certain' [Defendant] was driving at the time of the accident." Citing *Paiz*, Defendant suggests that the metro court's ruling showed bias in the State's favor.

**{15}** We fail to see how admitting Mr. Durkin's opinion under Rule 11-701 instead of Rule 11-702 establishes that the metro court was biased and "favor[ed] a particular position" of a party. *Paiz*, 1999-NMCA-104, ¶ 17. Defendant did not demonstrate that Mr. Durkin employed his expertise, rather than his personal observation, when forming his opinion or that he could not have qualified as an expert under Rule 11-702. Indeed, Mr. Durkin's mere mention of a background that might qualify him as an expert in some manner of accident reconstruction or police expertise does not alone transmute his personal observations into expert testimony. In the same vein, as we have noted, this evidence was relevant only to the past driving conviction, and Defendant has not challenged the future driving findings. Thus, any error in admitting his testimony under Rule 11-701 was harmless. *See State v. Downey*, 2008-NMSC-061, ¶ 39, 145 N.M. 232, 195 P.3d 1244 ("Error in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (internal quotation marks and citation omitted)). It is well established that a judge in a bench trial is able to properly weigh the evidence and disregard some evidence or argument in its function as fact-finder. *See State v. Hernandez*, 1999-NMCA-105, ¶ 22, 127 N.M. 769, 987 P.2d 1156. This presumption is supported by the development of the evidence in the present case. The metro court initially observed that it could find Mr. Durkin's knowledge and experience helpful, which indicates an appropriate effort by the metro court to "bring out all of the facts in order to ascertain the truth." *See Paiz*, 1999-NMCA-104, ¶ 17. Ultimately, however, the metro court did not rely on Mr. Durkin's testimony that Defendant was the driver when making its ruling on past driving and instead referred to Mr. Keen's testimony. The only indication of bias in the admission of Mr. Durkin's testimony as lay opinion is that the ruling was favorable to the State. An adverse ruling alone, however, does not demonstrate bias. *See Holzem v. Presbyterian Healthcare Servs.*, 2017-NMCA-013, ¶ 31, 388 P.3d 255 ("Adverse rulings alone are not sufficient to demonstrate judicial bias."). For these reasons, we cannot hold that the admission of Mr. Durkin's opinion testimony was evidence of bias by the metro court.

## D.     Defendant Did Not Establish Bias Through Cumulative Error

**{16}** Each instance identified by Defendant demonstrated no judicial bias in favor of the State, which undermines an assertion of cumulative error. *See State v. Casillas*, 2009-NMCA-034, ¶ 51, 145 N.M. 783, 205 P.3d 830 (holding that because there was no

error, there was no cumulative error). Viewing the identified instances of conduct together, we additionally discern no pattern of impatient, annoyed, dissatisfied, or angry behavior that "prevented the proper presentation of the cause or the ascertainment of the truth." *See Henderson*, 1998-NMSC-018, ¶ 6 (internal quotation marks and citation omitted). On that basis as well, we reject Defendant's assertion of cumulative bias that denied a fair trial.

**CONCLUSION**

**{17}**    We affirm Defendant's conviction.

**{18}    IT IS SO ORDERED.**

**KATHERINE A WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**